UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CHESTER RAYMOND BODMAN,

        Plaintiff,                     Case No. 1:14-cv-797

v.                                          Honorable Robert Holmes Bell

KRIS POFF et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed as frivolous.

### Factual Allegations

Plaintiff Chester Raymond Bodman presently is incarcerated at the Kinross Correctional Facility, though the actions about which he complains occurred while he was housed

at the Ionia County Jail (ICJ). He sues ICF Doctor (unknown) Messenger and his subordinate health care provider, Kris Poff.

On November 19, 2009, Plaintiff was in a serious car accident, after which he was taken to ICJ by police. Plaintiff alleges that, notwithstanding the seriousness of the accident, he did not see a health care provider until Defendant Poff treated him on November 23, 2009. Plaintiff's lips were cut, and the top lip had a hole all the way through it, where his teeth had penetrated. In addition, his chest was very sore and his nose was broken. Poff allegedly failed to treat all of Plaintiff's injuries. She gave Plaintiff peroxide to gargle and told him that "'[c]hests usually hurt after hitting a steering wheel' and there was 'nothing she could do for Bodman's broken nose[.']"

Plaintiff alleges that his lips eventually healed, but his chest still pops when he pulls his shoulders back, and his nose remains broken, with a bone blocking his right nasal passage. Because of the broken nose, Plaintiff experiences difficulty breathing and has bad headaches. On January 1, 2010, Plaintiff experienced the first seizure of his life, which he believes was caused by the head injury he incurred in the accident. Poff did not see Plaintiff until three days later, on January 4, 2010, after Plaintiff was back in his regular housing unit and assigned to a lower bunk. Poff's visit to Plaintiff was limited to viewing him from outside the cell and pushing a paper through the food slot. She performed no examination.

On January 13, 2010, a correctional officer required Plaintiff to use the top bunk, despite his prior assignment to a lower bunk because of his seizure. Plaintiff had a second seizure on March 29, 2010, during which he fell off the top bunk, landed on his head, and injured his neck, back and head. Plaintiff was taken to the Ionia County Memorial Hospital.

When Plaintiff returned to the jail with an injured back and neck, he had difficulty moving and he could not turn his head. On March 30, 2010, Plaintiff was taken to the Carson City Hospital for an EEG, because of instructions issued by Defendants Poff and Messenger. Plaintiff was charged for these medical bills.

Poff subsequently required Plaintiff to sleep on the floor of the holding cell for eight days, and she refused to relieve him from that sleeping requirement, despite his severe pain and inability to move. Plaintiff was not allowed to shower for eight days. On April 3, 2010, Plaintiff requested medical treatment because his pinky and ring finger were tingling and going numb. Plaintiff received no response, and his hand continues to go numb to this day. Later x-rays show that Plaintiff has a bone growth on his arm, which suggests that his arm was broken during the car accident.

Plaintiff apparently made additional medical requests. On April 9, 2010, Defendant Poff called Plaintiff to her office, demanding to know why he was sending rude medical requests. In response, Plaintiff asked Poff why she would not repond to his requests for medical care. She told Plaintiff that she had scheduled further testing, but if Plaintiff continued to complain, she would not help him at all. She also threatened to put Plaintiff back in a holding cell for another eight days. Over the next few months, Defendant Poff purportedly was aware of Plaintiff's pain and injuries, but she refused to see him. She also refused to provide Plaintiff with a second sleeping mat, despite the fact that second mats frequently were given to other prisoners.

Plaintiff acknowledges in his complaint that he filed a prior lawsuit concerning his treatment at ICJ, naming 21 defendants. Most of those defendants were custody personnel at the jail. *See Bodman v. Dennis et al.*, No. 1:11-cv-600 (W.D. Mich.). In that case, Plaintiff described the

same incidents, but his allegations focused on the actions of the custody personnel. One of the defendants named in the action was an unknown nurse. On October 3, 2013, more than two years after he filed the action, the Court dismissed the unknown nurse without prejudice, because Plaintiff had failed to identify the party and had failed to seek any assistance in doing so. *Id.* (docket #53). On February 12, 2014, following a bench trial, the Court found in favor of Plaintiff and against the only remaining Defendant, a custody officer, holding that the officer had been deliberately indifferent to a serious risk to Plaintiff's health and safety, thereby violating the Eighth Amendment. The Court found that Plaintiff had suffered $4,500.00 of damages during the fall from the bunk, but it reduced the amount to account for Plaintiff's own comparative negligence, resulting in a judgment of $2,250.00. *Id.* (docket ##68, 69). From the instant complaint, it appears that Plaintiff has finally identified Defendant Poff as the unknown nurse he attempted to sue in his prior action and that he now wishes to bring a claim against her.

Plaintiff asserts that Defendant Poff was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. He seeks declaratory relief, together with compensatory and punitive damages.

## **Discussion**

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.

1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiff's complaint is untimely. He asserts claims arising between January 2009 and a "few months" after April 16, 2010. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued, at the latest, sometime in mid-2010. However, he did not file his complaint until July 23, 2014, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981, does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's action will be dismissed as frivolous.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: September 29, 2014          /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    UNITED STATES DISTRICT JUDGE